UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROBERT F. TIRABASSI

                        Plaintiff,              08-CV-6027

          v.                            **DECISION
                                        and ORDER**
MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____

## INTRODUCTION

     Plaintiff, Robert F. Tirabassi ("Plaintiff"), brings this
action pursuant to §§ 216 (i) and 223 (d) of the Social Security
Act, seeking review of the decision of the Commissioner of Social
Security ("Commissioner"), denying his application for Disability
Insurance Benefits ("DIB").  Plaintiff alleges that the decision of
the Administrative Law Judge("ALJ"), John P. Costello, that the
plaintiff was not disabled within the meaning of the Social
Security Act, was not supported by substantial evidence and was
contrary to the applicable legal standards.

     The Plaintiff moves for judgment on the pleadings pursuant to
Fed. R. Civ. P. 12 (c), on the grounds that the ALJ's decision was
not supported by substantial evidence and was based on an erroneous
legal standard.  The Commissioner opposes the Plaintiff's motion,
and cross-moves for judgement on the pleadings on the grounds that
the Commissioner's decision was supported by substantial evidence.
This Court finds that the decision of the Commissioner was
supported by substantial evidence in the record and was in
accordance with the applicable legal standards.  Therefore, for the

reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed an application under Title II of the Social Security Act for Disability Insurance Benefits on October 5, 2004. (Transcript of the Administrative Proceedings at pages 26, 83) (hereinafter "T."). In his application, Plaintiff, a former truck painter, tire changer, and landscaper, claimed a disability due to cervical and lumbar spine injuries caused by two motor vehicle accidents on February 11, 2003 and November 17, 2003. (T. at 83-4, 151). Plaintiff's application was initially denied on March 3, 2005, and Plaintiff timely requested a hearing. (T. at 48-53).

Plaintiff then appeared, with counsel, before ALJ John P. Costello on September 26, 2006 in Rochester, New York. (T. at 26). A Vocational Expert also testified at the hearing. Id. In a decision dated October 20, 2006, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied further review, and the decision of the ALJ became the final decision of the Commissioner on November 13, 2007. (T. at 6-8). On January 15, 2008, Plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When

considering such claims, the court is directed to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record and that the Commissioner followed the applicable legal standards. 42 U.S.C. §405 (g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 217 (1938). Section 405 (g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing court does not try a benefits case de novo). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Commissioner asserts that his decision is based on substantial evidence in the record and moves for judgment on the pleadings pursuant to Rule 12 (c). The Plaintiff's moves for judgement on the pleadings on the grounds that there was not substantial evidence in the record to support the Commissioner's finding, and that the finding was based on an erroneous legal standard. Judgement on the pleadings may be granted under Rule 12 (c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F. 2d 639 (2d Cir. 1988). After reviewing the pleadings, if

the court is satisfied that the Plaintiff could prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v.</u> <u>Gibson</u>, 355 U.S. 41, 45-46 (1957). In this case, this court finds that there was sufficient evidence in the record for the Commissioner to find that the Plaintiff was not disabled. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## II. <u>The Commissioner's decision to deny the Plaintiff Disability Insurance Benefits is supported by substantial evidence.</u>

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. In his decision, the ALJ adhered to the following five step sequential analysis required for evaluating Social Security Disability benefits claims:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment (s) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

(4) if the claimant's impairment(s) does not prevent him from doing past relevant work, he is not disabled;

(5) even if the claimant's impairment(s) prevent him from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

See 20 C.F.R. §§404.1520 (a) (i)-(iv) and 416.920(a)(4)(i)-(iv). In this case, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since February 13, 2003; (2) the Plaintiff has the "severe" impairments, back pain and depression; (3) the Plaintiff does not have a combination of impairments that meets or medically equals those listed in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff is unable to perform any past relevant work; and (5) the Plaintiff has the Residual Function Capacity to perform a full range of sedentary work with the following limitations: lifting and carrying no more than 5 pounds, standing or sitting limited to 20 minutes before changing position, and no stooping, balancing, twisting, crawling, or climbing. (T. at 28).  The ALJ then found that, considering the Plaintiff's age, education, and work experience, there were jobs in significant numbers in the economy that the Plaintiff could perform.  (T. at 32-3).  Therefore, the Plaintiff was not disabled within the meaning of the Social Security Act. Id.

After reviewing the entire record, including the medical evidence, this court finds that there was substantial evidence for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act.

A.   **The ALJ's decision is supported by substantial evidence in the record.**

The ALJ determined that the Plaintiff could perform a full range of sedentary work with the limitations listed above. The Plaintiff argues that the ALJ did not specifically articulate the

weight given to the opinions of the treating physicians.  However, the medical evidence in the record, including the evidence from the treating physicians, supports the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act. (See Plaintiff's Brief at 6).

A treating physician's opinion is given controlling weight if it is found to be well-supported by  medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §416.927(d)(2), §416.1527(d)(2).  In evaluating the treating physician's opinion, the ALJ must consider the length, nature, and frequency of the relationship, whether it is supported by the medical evidence, whether it is consistent with the record as a whole, whether the physician is specialized, and any other relevant factors. 20 C.F.R. §404.1527(d)(2).  Where the ALJ discredits the opinion of a treating physician, he must provide good reasons. Schall v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). In addition, the opinion of a consultive physician may be considered by the ALJ, and should be subjected to the same evaluation as the opinion of a treating physician. See 20 C.F.R. §1527(d)(2).  The ultimate determination of disability, however, is reserved to the Commissioner. 20 C.F.R. §416.927(e).

In this instance, the medical evidence from the treating physician's was properly considered and formed the basis for the ALJ's decision that the Plaintiff could perform sedentary work with some limitations. (See T. at 28-31) The ALJ also gave "some" weight to the opinions of the consultive physicians, whose diagnoses and

prognoses were substantially similar to those of the treating physicians. (T. at 29-31). Thus, there was substantial evidence, including the medical evidence from the treating physicians, that the Plaintiff was not disabled.

Following a motor vehicle accident, Plaintiff saw his primary care physician, Dr. Charles Maskiell, M.D., on February 13, 2003. (T. at 151). Dr. Maskiell diagnosed a cervical and thoracic sprain and ordered cervical spine X-rays. Id. Plaintiff was prescribed Flexeril 10-30 mg. Id. The X-Rays revealed no abnormalities, and a subsequent MRI and neurological examinations were also normal. (T. at 157). Dr. Michael Obrecht, D.O., a family doctor, also saw the Plaintiff after the motor vehicle accident, and diagnosed a cervical and thoracic sprain. (T. at 153). He further prescribed Celebrex, 200 mg., Vicodin, Neurontin, 300 mg., and physical therapy. (T. at 153, 157).

Plaintiff was referred to Dr. David Speech, M.D., who diagnosed thoracic back pain and low back pain, and ordered an MRI. (T. at 194-5). The MRI did not reveal abnormalities. (T. at 192). Dr. Speech referred Plaintiff to Dr. Jaimala Thanik, M.D., for pain management, and ordered electrodiagnostic studies, which were normal. (T. at 192, 199). At a follow up examination, on August 18, 2003, Dr. Speech opined that the Plaintiff had a mild to moderate partial disability and could work with a 25 pound weight lifting restriction and limited bending and twisting. (T. at 184). He recommended continued pain management and home exercise. Id.

During this period, Plaintiff received cortisone injections at the Strong Memorial Hospital Pain Clinic and underwent physical therapy. (T. at 224, 171). The Plaintiff also saw Behavioral Pain Management specialist, Dr. Michael Kuttner, Ph.D., in October, 2003 who recommended vocational rehabilitation and provided information about VESID. (T. at 249)

On July 17, 2003, the Plaintiff saw consultive physician Dr. Patrick Hughes, M.D., who diagnosed a cervical, thoracic, and lumbosacral strain. (T. at 238). Dr. Hughes opined, after examining the Plaintiff and reviewing the diagnostic studies, that the Plaintiff was not disabled and could work without restrictions. Id. .

Plaintiff was then involved in a second motor vehicle accident on November 17, 2003. (T. at 180). He saw Dr. Speech on December 1, 2003, who ordered X-rays. Id. The X-rays revealed no abnormalities, and Dr. Speech recommended continued pain management with Dr. Thanik and Dr. Kuttner. Id. Dr. Speech stated the Plaintiff could work with 25 pound weight restrictions and limited bending and twisting. Id. On a follow up examination on January 5, 2004, Dr. Speech stated that he had no other medical options for the Plaintiff and continued his recommendation for pain management. (T. at 178). Dr. Speech reported that Plaintiff could work with lifting, bending and twisting limitations. Id. Further X-rays taken February 27 and March 2, 2004, revealed no significant abnormalities. (T. at 270-1).

Plaintiff received chiropractic care from Dr. Steven Ess from February 20, 2004 through May 13, 2004. (T. at 253-268). Dr. Ess completed a disability report in October, 2004, that stated the Plaintiff had chronic, moderate to severe lumbar and cervical spine pain and that Plaintiff was limited to lifting 5-10 pounds, standing and walking 2 hours per day with positional changes, sitting less than 6 hours per day with positional changes, and could perform limited pushing and pulling. (T. at 294-300). He opined that Plaintiff was disabled. (T. at 299). Plaintiff also saw chiropractor Dr. David Syracuse, who opined that Plaintiff had a mild to moderate disability and was able to return to work at 50-70% capacity with the following limitations: avoid bending, twisting, and lifting more than 5 pounds, and avoid prolonged sitting or standing without positional changes. (T. at 274, 278).

Plaintiff was evaluated by orthopaedic surgeon, Dr. Graham Huckell, M.D., on July 15, 2004, who ordered and MRI and recommended he continue conservative treatment. (T. at 292). He opined that Plaintiff was temporarily and totally disabled. Id. The MRI revealed a slight bulging at L4-L5, straightening of the lumbar lordosis, and evidence of a posterior annular tear at L5-S1. (T. at 285). Dr. Huckell did not recommend surgery. (T. at 286). He reported that the Plaintiff had tried to return to work, but his employer would not accept him with the restrictions from his physicians. Id.

On December 17, 2004, Plaintiff underwent an intellectual evaluation with consultive physician, Dr. Christine Ransom, Ph.D.,

who diagnosed the Plaintiff with depression and borderline intellectual capacity. (T. at 310). She recommended that he seek mental health treatment and stated that his prognosis was fair. Id. She opined that the Plaintiff could perform simple tasks and would have mild to moderate difficulty performing complex tasks. Id.

In February, 2005, Plaintiff again sought treatment from Dr. Huckell. (T. at 374). Dr. Huckell recommended Intradiscal Endothermic Therapy (IDET), after X-Rays revealed discogenic pain at L4-5 and L5-S1 with inner annular degeneration. (T. at 374).

Plaintiff then returned to his family doctor, Dr. Obrecht, who reported that Plaintiff tested positive for cocaine metabolites. (T. at 345). Plaintiff's surgery was cancelled because of the drug test results. (T. at 345). Plaintiff denied the use of cocaine, and the surgery was scheduled for July 13, 2005 (T. at 345, 347). At that time, Dr. Obrecht opined that Plaintiff had a partial disability and could perform only sedentary work. (T. at 348).

Following the IDET procedure, Plaintiff returned to Dr. Huckell complaining of continued pain. (T. at 394). On January 9, 2006, Dr. Huckell provided the Plaintiff with a TENS unit and suggested he continue chiropractic care. (T. at 396). Dr. Huckell opined that Plaintiff was temporarily and totally disabled. On July 12, 2006, Dr. Huckell suggested further surgical treatment, which Plaintiff refused. (T. at 400).

Plaintiff also underwent a medical examination for Liberty Mutual Insurance by Dr. William McKenzie, M.D., on May 2, 2006. (T. at 402). Dr. McKenzie stated that Plaintiff's cervical,

thoracic, and lumbar pain was greater than could be objectively predicted by neurological and imaging tests. (T. at 405). However, he believed no further treatment would be beneficial. Id. Dr. McKenzie also stated that Plaintiff could work in a sedentary capacity with the ability to change positions frequently, weight lifting restrictions of 10-20 pounds, and limited bending and twisting. Id.

In his opinion, the ALJ gave appropriate weight to the opinions of Plaintiff's treating physicians and the consultive physicians.  The ALJ concluded that the Plaintiff could perform sedentary work with the limitations imposed by both the treating and consultive physicians:  lifting and carrying limited to 5 pounds; standing and sitting limited to 20 minutes with the ability to change position; and no stooping, balancing, twisting, crawling, or climbing. (T. at 28).  While Dr. Huckell opined that the Plaintiff was disabled, the Plaintiff's other treating physicians, and the consultive physicians, concluded that he could perform sedentary work within these limitations. (T. at 178, 180, 294-300, 274, 278, 348, 405).  In addition, it was noted by Dr. Huckell that Plaintiff tried to return to work following the second accident, but his employer would not allow him to work with the limitations listed by his treating physicians. (T. at 286). Thus, there was substantial evidence in the record to support the ALJ's conclusion that the Plaintiff could perform sedentary work with the limitations imposed by the treating and consultive

physicians, and was not disabled within the meaning of the Social Security Act.

**B.   The ALJ properly concluded that the Plaintiff's subjective complaints were not entirely credible.**

The Plaintiff argued that the ALJ did not properly evaluate his credibility and subjective complaints. (Plaintiff's Brief at 7).  The ALJ found that the Plaintiff's impairments could produce Plaintiff's symptoms, but that the Plaintiff's testimony of the intensity, persistence, and limiting effects of the symptoms was not entirely credible. (T. at 31).

Plaintiff testified that he had neck and lower back pain due to two motor vehicle accidents. (T. at 416-419).  He stated that he had been prescribed medication and a TENS unit, and was currently taking ibuprofen along with using the TENS unit. (T. At 420-1). He testified that without medication or the TENS unit his pain was a 10 or higher, on a 1-10 scale, and with the TENS unit and medication, his pain was a 7 or 8. Id.

Plaintiff testified that he could stand and sit for 20-30 minute intervals, and that he uses a walking stick provided by his brother.  (T. at 422-3).  He stated that he takes walks for exercise, shops, and that he occasionally goes out to eat with friends. (T. at 434).  He stated that he has been on Zoloft and other medication for depression, but is no longer taking anything for this problem. (T. at 424).

Plaintiff testified that after the first car accident the pain stopped and he returned to work. (T. at 429).  However, he had not

Page 12

been back to work since the second car accident because his employer would not take him back with the restrictions he was placed on by his doctors. (T. at 429-30).  He stated that his employer would not take him back even after a doctor for the insurance company lifted some of the restrictions. (T. At 431-2). He further testified that one of his doctors recommended that he go back to school, and he wished to pursue his education further. (T. at 434).

The ALJ properly considered this evidence and concluded that the Plaintiff's subjective complaints were not entirely credible. Plaintiff was capable of performing daily activities and exercise, was not taking strong medication, and sought to return to work following his second car accident.  Based Plaintiff's testimony, and the medical evidence in the record, this court finds that there was substantial evidence in the record to support the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings.  Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          February 12, 2009